AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

SEP 24 2021

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

349 S Park Street,
Marion, Virginia 24354

Case No. 1:21mj117

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
349 S Park Street, Marion, Virginia 24354 - to include the residence, curtilage, garages, outbuildings, campers, persons present and vehicles present. Attachment A consists of a photograph of the residence.

located in the _____Western_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |
| 21 USC 846 | Conspiracy to Distribute Controlled Substances |
| 21 USC 843(b) | Use of Any Communication Facility in Committing Drug Offenses |

The application is based on these facts:
See Affidavit, attached.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Zachary A.W. King, Task Force Officer, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_telephone_ *(specify reliable electronic means)*.

Date: 9/23/21

*Judge's signature*

City and state: Abingdon, Virginia        Pamela M. Sargent, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT C

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT

*349 S Park Street, Marion, Virginia 24354*

I, Zachary A. W. King, being duly sworn, depose and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for authorization to seek, and to seize evidence, fruits, and instrumentalities of the distribution of counterfeit Oxycodone-hydrochloride pills that are suspected to contain the drug fentanyl, a Schedule II Controlled Substance. As a result of participating in this investigation and reviewing information relevant to this investigation, and based on my training and experience, this Affiant believes there is evidence of violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Possession of a Controlled Substance in Schedule I or II with Intent to Distribute); 21 U.S.C. § 843(b) (Use of Any Communication Facility in Committing Drug Offenses); and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances) maintained at 349 S Park Street, Marion, Virginia (the Subject Residence), which is in the Western District of Virginia.

2. I am a Task Force Officer (TFO) with The Federal Bureau of Investigation (FBI) and have been so employed since July 2021. I am currently

1

assigned to the Richmond Division, Bristol Resident Agency of the FBI, and am responsible for investigating controlled substance violations involving the trafficking and subsequent distribution of those substances. I am also a Narcotics Investigator for the Smyth County Sheriff's Office, and I have received specialized training in investigations involving the trafficking of controlled substances and the proceeds from the sale of controlled substances. I have also received training on the identification and interdiction of controlled substances. I have been with the Smyth County Sheriff's Office since August of 2016, and I have been an Investigator for approximately the last two years. Before I started working in civilian law enforcement, I worked for six years as a military police officer in the United States Air Force. I was honorably discharged from the Air Force in December 2013.

3. Based on my training and experience, my own investigation of this matter, information that I have learned from other law enforcement officers, and communication with a confidential human source (CHS), I submit that there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Possession of a Controlled Substance with Intent to Distribute); 21 U.S.C. § 843(b) (Use of Any Communication Facility in Committing Drug Offenses); and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances), have been committed by Dakota Shadoe Tunnell (TUNNELL), who resides at the

2

Subject Residence. I further submit that there is probable cause to believe that evidence, fruits, and instrumentalities of such violations will be found at the Subject Residence.

4. As this Affidavit is being submitted for a limited purpose, I have not included all facts known by law enforcement. I only set forth facts necessary to support the issuance of the requested search warrant.

## APPLICABLE LAW

5. Pursuant to 21 U.S.C. § 843(b), it is "unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II."

6. Distribution of controlled substances, in violation of 21 U.S.C. § 841(a) constitutes "a felony under any provision of this subchapter," as cited above. Fentanyl is classified as a Schedule II Controlled Substance under the Controlled Substance Act Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970.

7. A "communication facility" is defined as "any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication." 21 U.S.C. § 843(b).

3

8. Section 846 of Title 21 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

## INVESTIGATION AND PROBABLE CAUSE

9. On or about June 8, 2021, I engaged the U.S. Postal Inspection Service (USPIS) and the FBI for support in connection with an ongoing investigation of illegal pill distribution and fatal and non-fatal overdoses in Smyth County. The overdoses were suspected to result from the distribution of counterfeit "pressed" pills that contained fentanyl, some of which were being shipped through the U.S. mail. Law enforcement identified multiple people who appeared to be engaged in the distribution of such pills.

10. As part of that investigation, in June 2021, law enforcement seized approximately 5,000 illegal pills bearing a resemblance to 30 milligram Oxycodone-hydrochloride pills, i.e. Roxicodone. The pills were small, round, and light blue, and they had an imprint of the letter "M" on one side, and "30" on the other side. Based on open-source drug references, this appearance is similar to a pharmaceutical preparation of Oxycodone-hydrochloride pills. These pills are sometimes referred to as "M30s." However, the seized pills were inconsistent in size, shape, and color, as compared to pills of a pharmaceutical grade. Based on

4

my training and experience, these inconsistencies are indicative of counterfeit "pressed" pills that contain fentanyl, rather than pharmaceutical grade Oxycodone-hydrochloride pills.

11. These pills were subsequently sent to the USPIS forensic lab for analysis. The analysis concluded that the pills contained the drug fentanyl. Also in July 2021, law enforcement executed a search warrant in Southern California on a suspected source of supply for those counterfeit pills. The search led to the discovery of approximately 30,000 more pills, which had the same inconsistent appearance and the same markings as those seized by law enforcement in Virginia.

12. On August 26, 2021, during an interview between law enforcement and a CHS who has been part of this investigation and actively engaged in the purchase and sale of fentanyl-containing counterfeit Oxycodone-hydrochloride pills, it was discovered that TUNNELL was actively distributing counterfeit "M30" Oxycodone-hydrochloride pills that are suspected to contain fentanyl. The CHS further disclosed that TUNNELL utilized the Snapchat digital application to communicate with the CHS regarding the distribution of the aforementioned pills. The CHS has previously trafficked and distributed counterfeit Oxycodone-Hydrochloride pills that contain fentanyl, and as such is familiar with the intricacies of transporting and distributing the pills. Furthermore, the CHS has indicated that Snapchat is routinely used by both traffickers and distributors of

these pills to communicate with sources of supply, co-conspirators, and purchasers of the drug.

13. On August 27, 2021, at the direction of law enforcement, the CHS contacted TUNNELL via Snapchat to inquire about purchasing the aforementioned pills. TUNNELL initially stated that he could supply the CHS with 1000 pills for $15.00 each. TUNNELL further explained that his source of supply for the pills was "running low" and only had 1500 pills left. According to the CHS, TUNNELL told the CHS that the CHS would need to purchase the pills quickly or wait for TUNNELL's source of supply for the pills to receive more.

14. On August 28, 2021, at the direction of law enforcement, the CHS contacted TUNNELL via Snapchat and requested to purchase 150 pills at the pre-negotiated price of $15.00 per pill. TUNNELL replied that he would have to confirm the price with his source of supply, and subsequently stated that the price per pill would be $17.00 for a quantity of 150, totaling $2,550.00. At the direction of law enforcement, the CHS agreed to the terms of the transaction. TUNNELL then explained to the CHS that he would need to meet his source prior to the purchase, and that he would likely do so on August 30, 2021.

15. On August 30, 2021, at the direction of law enforcement, the CHS contacted TUNNELL via Snapchat to inquire about the pre-negotiated purchase of 150 pills. TUNNELL advised that he was waiting on his source to arrive from

6

West Virginia, and that his source was traditionally "very slow." Furthermore, the CHS helped law enforcement in documenting digital content sent from TUNNELL's Snapchat account, which operates under the username "courtandkodat19," and vanity name "Kodak Koda." The digital content included a video clip, or "Snap," sent by TUNNELL on August 30, 2021. The video displayed what appeared to be a multi-tier plastic container that contained multiple small, circular, blue pills, scored with an "M." Based on my training and experience, these pills are indicative of counterfeit Oxycodone-hydrochloride pills that are likely to contain fentanyl. A second "Snap" sent by TUNNELL on or about August 30, 2021, was of TUNNELL himself holding what appeared to be a black pistol of unknown make, model, or caliber. Also included in the digital content was a voice clip sent from TUNNELL. The clip said that TUNNELL would have the pills tomorrow and that he had the money to purchase the pills. The audio also indicated that TUNNELL would meet with his source for the pills on August 31, 2021. Additionally, the audio revealed that TUNNELL had some of the pills on hand, though not enough to distribute the full amount to the CHS.

16. On September 2, 2021, TUNNELL contacted the CHS via Snapchat and disclosed that he had acquired approximately 200 pills, which was 450 less than he anticipated. As a result, TUNNELL stated he could only sell 100 pills to the CHS. At the direction of law enforcement, the CHS requested and

7

subsequently received a "Snap" of the pills TUNNELL had purchased. TUNNELL later stated that he expected to purchase an additional 450 pills from his source of supply on September 04, 2021.

17. On September 5, 2021, law enforcement utilized the CHS to execute a controlled purchase of approximately 100 pills from TUNNELL for a predetermined $1700. The purchase was electronically monitored, and both audio and video recorded. TUNNELL utilized Snapchat to communicate with the CHS both before and after the controlled purchase occurred. A visual inspection of the pills purchased from TUNNELL revealed that the pills were consistent with other counterfeit Oxycodone-hydrochloride pills previously seized by law enforcement over the course of this investigation, including the pills described above that tested positive for fentanyl. The pills bear the same "M" and "30" marks, and they are inconsistent in size, shape, and color as compared to pharmaceutical Oxycodone-hydrochloride pills. Based on my training and experience, and my participation in this investigation, I believe these pills likely contain fentanyl. These pills have been sent to the USPIS laboratory for testing, and the results are pending.

18. On September 20, 2021, during a debrief with law enforcement, the CHS explained that TUNNELL would distribute the pills to "anyone." The CHS further explained that TUNNELL would routinely distribute the pills in smaller quantities at a higher price point, charging lower-level customers $30 to $40 per

8

pill, greatly increasing his profit margins. Additionally, the CHS stated that in his dealings with TUNNELL over the last six months, TUNNELL actively engaged in distributing the pills from the Subject Residence. This information is consistent with the CHS's controlled purchase from TUNNELL on September 5, 2021, in that the CHS was directed by TUNNELL to meet him at the Subject Residence. When the CHS went to the Subject Residence, TUNNELL exited the Subject Residence, and the CHS and TUNNELL drove approximately 50 yards from the Subject Residence, where the controlled purchase of 100 pills occurred. After the transaction, the CHS then drove TUNNELL back to the Subject Residence, where TUNNELL exited the vehicle. After a brief conversation, the CHS observed TUNNELL walking towards the residence with the $1,700 provided by law enforcement for the purchase.

19.     Since that time, the CHS has been in routine contact with TUNNELL through Snapchat. During these conversations, TUNNELL has indicated on multiple occasions that he continues to actively distribute the counterfeit Oxycodone-hydrochloride pills in an effort to make $10,000. TUNNELL further explained the to the CHS that he intended to use the $10,000 to purchase "a boat" from his source of supply, which is a term I know to mean a quantity of 1,000 pills. The CHS also disclosed to law enforcement that TUNNELL had stated that his two

main customers for the pills had recently "left town" together, and that this had delayed his ability to distribute the pills in larger quantities.

## CONCLUSION

20. Based on the foregoing information, I believe that probable cause exists that evidence of violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Possession of a Controlled Substance with Intent to Distribute); 21 U.S.C. § 843(b) (Use of Any Communication Facility in Committing Drug Offenses); and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances) will be found inside the Subject Residence, which is located within the Western District of Virginia. Accordingly, I request that the Court issue the proposed search warrant.

21. The government will execute this warrant by serving the warrant on TUNNELL and/or other occupants inside of the residence, after properly announcing the presence of law enforcement and the intent to execute a search of the residence. This warrant will be executed during daylight hours, between 6:00AM and 10:00PM.

## REQUEST FOR SEALING

22. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly,

10

there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Zachary A. W. King
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to telephonically this 23rd day of September, 2021.

Pamela Meade Sargent
United States Magistrate Judge

Reviewed by: Whitney D. Pierce, Assistant U.S. Attorney

11

## ATTACHMENT A



349 S Park Street
Marion, Virginia 24354

## ATTACHMENT B

1. Counterfeit Oxycodone-hydrochloride pills, or other similar imitation pills inconsistent in color, shape, size, or markings with a pharmaceutical preparation of those pills.

2. Counterfeit Oxycodone-hydrochloride, or "pressed" pills distribution paraphernalia including (but not limited to) scales, packaging material, and devices used to communicate with other drug traffickers and co-conspirators, including (but not limited to) cellular telephones, desktop and laptop computers, electronic equipment used for counter-surveillance to include video surveillance systems and related digital video recorders (DVRs), scanners, and electronic signal disruption equipment.

3. Hardware wallets and other secure digital storage devices used to store cryptocurrency and private keys, including but not limited to single-chip and double chip bases.

4. Books, records, ledgers, notes, receipts, photos, and videos pertaining to the illicit distribution, purchasing, and transporting of counterfeit Oxycodone-hydrochloride pills. These items may be contained in digital storage devices such as universal serial bus (USB) flash-drives, external hard drives, and mobile cellular telephones.

5. Messages, letters, telephone numbers, and addresses relating to customers, suppliers, co-conspirators involved with the illicit distribution, purchasing and transporting of counterfeit Oxycodone-hydrochloride pills. These documents may be written on personal calendars, personal address and/or telephone books, notebooks, loose pieces of paper, and/or contained in digital storage devices such as USB flash-drives, external hard drives, and mobile cellular telephones.

6. Items or articles of personal property tending to show ownership, dominion, or control of the premises, property, and/or vehicles. Such items articles include but are not limited to, personal identification, personal correspondence, journals, checkbooks, notes, photographs, keys, receipts, mail, address books, videos, and or motor vehicle related documents, e.g. titles and registrations. These may be contained in digital storage devices such as USB flash-drives, external hard drives, and mobile cellular telephones.

7. Large amounts of currency (exceeding $1,000.00) or readily transported assets which are used as cash equivalents, e.g. cashier's checks, prepaid money/credit cards, money orders), including cryptocurrency assets that may be stored in digital applications, and/or hardware wallets.